DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, PNH, Inc., appeals from a judgment of the Summit County Court of Common Pleas on its claims against David Barnitt and William Sayavich. Barnitt and Sayavich cross-appeal from that aspect of the judgment that denied their third-party claims against Ronald Creatore individually and as trustee for the Ronald M. Creatore Living Trust ("Creatore"). This Court affirms.
 I. {¶ 2} During late 2000, Ronald Creatore, David Barnitt, and William Sayavich formed U.S. Sanitary Corporation ("USSC") for the purpose of purchasing an existing company, Girton, Oakes, and Burger, Inc. (GOB). USSC and GOB borrowed over $2 million from Provident Bank to finance the purchase and ongoing operations of GOB. Creatore, Barnitt, and Sayavich each personally guaranteed the Provident Bank loans and executed an agreement, personal guarantees, and promissory notes to that effect. *Page 2 
 {¶ 3} Within the next few years, GOB developed financial problems and the business relationship between the three men deteriorated. Creatore, Barnitt, and Sayavich started making accusations and placing blame on each other for the financial problems that had developed and continued to transpire. Creatore was on one side of the developing and ongoing dispute and Barnitt and Sayavich were on the other.
 {¶ 4} In 2003, Creatore formed PNH, Inc. to purchase the Provident Bank loans. Approximately one hour after PNH purchased the Provident Bank loans, Alfa Laval, a large supplier and creditor of GOB, filed an involuntary bankruptcy petition, forcing GOB into bankruptcy. Because PNH was a secured creditor, it received a partial satisfaction of the GOB loan obligation by accepting inventory and other property of GOB. PNH entered into a settlement with the bankruptcy trustee on its claim against GOB.
 {¶ 5} It was Creatore's position that the loan purchase by PNH was an effort to save GOB from foreclosure and reorganization. Barnitt and Sayavich, however, questioned the motives of Creatore and PNH. Furthermore, Creatore believed that Barnitt and Sayavich knew about or were somehow involved in the decision by Alfa Laval to file the bankruptcy action. Each side began to accuse the other of fraud, breach of contract, and other wrongdoing. Their accusations eventually developed into the parties' claims in this litigation.
 {¶ 6} This action began with PNH filing separate complaints against Barnitt and Sayavich to collect on their personal guarantees on the cognovit notes. The cases were later consolidated and, although the trial court initially awarded PNH judgment against both defendants, it later vacated the judgment pursuant to Civ. R. 60(B). *Page 3 
 {¶ 7} Barnitt and Sayavich filed counterclaims against PNH and also filed third-party claims against Creatore. PNH later filed an amended complaint to add a claim for abuse of process. Creatore also filed counterclaims against Barnitt and Sayavich.
 {¶ 8} During 2005, the trial court held a jury trial on the following claims: PNH's claim against Barnitt and Sayavich for breach of the loan guarantee and the counterclaims of Barnitt and Sayavich for fraud, negligence, abuse of process, and breach of contract. The jury entered a verdict for Barnitt and Sayavich on PNH's claim against them and for PNH on all of the counterclaims against it. The trial court entered judgment on the verdict, ordering that the parties take nothing on any of the claims and counterclaims.
 {¶ 9} A second jury trial was held during February 2007 on the legal claims of Barnitt and Sayavich against third-party defendant Creatore. A visiting judge presided over the trial. The trial court granted a directed verdict on all of the claims of Barnitt and Sayavich except breach of contract and fraud. The trial court also dismissed Creatore's counterclaims for abuse of process and Creatore voluntarily dismissed his remaining claims pursuant to Civ. R. 41(A). On the claims of Barnitt and Sayavich for breach of contract and fraud, the jury's verdict was for Creatore on both claims. The trial court entered judgment on the verdict.
 {¶ 10} Finally, after all legal claims had been decided by a jury, the visiting judge who had presided over the second jury trial addressed the third-party claims of Barnitt and Sayavich for equitable contribution. Because the contribution claim was a matter of equity to be determined by the trial judge without a jury, it was determined in a final phase, after the second jury trial. See Lytle v. Household Mfg., Inc. (1990),494 U.S. 545, 550, 110 S.Ct. 1331, 108 L.Ed.2d 504. *Page 4 
 {¶ 11} The visiting judge ordered the parties to brief the issue and to submit proposed findings of facts and conclusions of law. After reviewing the parties' briefs and proposed findings of fact and conclusions of law, the visiting judge entered judgment for Creatore on the equitable contribution claims against him.
 {¶ 12} PNH appealed and, apparently because it intended to challenge only that portion of the judgment that resulted from the first trial, it filed a praecipe to the court reporter that limited its request to a transcript of the first trial. Its praecipe instructed the court reporter to prepare "the full transcript of proceedings in the above titled matter from all motion in limine hearings, trial and post trial arguments from September 16, 2005 through September 30, 2005[.]" A transcript of the September 2005 trial was later prepared and made part of the record on appeal.
 {¶ 13} Barnitt and Sayavich cross-appealed and, although they later assigned error to additional proceedings in the trial court, they filed no further praecipe with the court reporter. Consequently, the record does not include a transcript of proceedings of the second trial, held during February 2007.
 {¶ 14} In its appeal, PNH raises three assignments of error. Barnitt and Sayavich raise one cross-assignment of error in their cross-appeal.
 II. ASSIGNMENT OF ERROR I "WHETHER THE LOWER COURT ERRED IN MAKING A FINAL DETERMINATION TO EXCLUDE THE MAJORITY OF APPELLANT'S CLAIM ON THE BASIS OF A MOTION IN LIMINE FILED BY APPELLEES JUST PRIOR TO THE COMMENCEMENT OF TRIAL." *Page 5 
 ASSIGNMENT OF ERROR II "WHETHER THE LOWER COURT ERRED IN GRANTING APPELLEES['] MOTION IN LIMINE TO EXCLUDE APPELLANT'S CLAIM ON A PAYMENT GUARANTEE MADE IN CONJUNCTION WITH A COMMERCIAL LOAN. SPECIFICALLY, DID THE LOWER COURT ERR IN DETERMINING THAT A SETTLEMENT AGREEMENT BETWEEN THE BANKRUPTCY TRUSTEE (ON BEHALF OF A CO-BORROWER/BANKRUPT DEBTOR) AND THE SECURED LENDER (APPELLANT) REQUIRED THE SECURED LENDER TO REDUCE THE APPELLEES' PAYMENT GUARANTEE BY AN AMOUNT EQUAL TO THE DEBTOR'S BOOK VALUE FOR CERTAIN REPOSSESSED COLLATERAL, AS OPPOSED TO THE SUBSTANTIALLY LOWER AMOUNT OF MONIES ACTUALLY OBTAINED BY THE SECURED LENDER UPON DISPOSITION OF THE REPOSSESSED COLLATERAL."
 {¶ 15} We will address the first two assignments of error together because they are closely related. These assignments of error specifically pertain to PNH's claim against Barnitt and Sayavich for breach of the loan guarantee, a claim that was determined in the first trial held in September 2005.
 {¶ 16} On September 7, 2005, prior to the commencement of the first trial, Sayavich filed a motion in limine, through which he sought a pre-trial determination that the value of the GOB inventory and other property that PNH received in the bankruptcy settlement must be credited against the obligation of the guarantors and that the value of the GOB property had been conclusively established in the bankruptcy court at its book value of approximately $412,000. In response, PNH did not dispute that Sayavich and Barnitt, as guarantors, were entitled to credit for the portion of the debt that had been paid. The sole dispute was how to value the property that PNH had received in partial satisfaction of the debt: the approximate value of $96,000 that the property would be worth if sold on the open market, or the much higher book value of over $400,000, as determined in the bankruptcy case. Sayavich sought to preclude *Page 6 
PNH from presenting evidence to contradict the higher valuation as determined in the GOB bankruptcy proceedings. The trial court granted Sayavich's motion in limine.
 {¶ 17} PNH contends that the trial court erred in making its in limine ruling that prevented it from establishing that the property PNH received in the GOB bankruptcy settlement was actually worth less than $100,000, not over $400,000. PNH maintains that the trial court effectively reduced its potential breach of guarantee claim "from approximately $500,000 to approximately $100,000[.]"
 {¶ 18} Although PNH maintained that this was not an appropriate subject for an in limine ruling, but instead should have been determined through a motion for summary judgment, it cited no legal authority to support that position. Despite the suggestions of PNH to the contrary, the trial court did not dismiss its entire claim for breach of guarantee; it merely placed a limitation on the value of its damages. Evidentiary limitations on the valuation of damages are frequently decided through motions in limine, which are later preserved for appeal through timely objections or proffers of the evidence at trial. See, e.g., Martin v. Lake Mohawk Property Owners Assn., Inc., 7th Dist. No. 06-CA-841, 2007-Ohio-6432, at ¶ 24; Wooten v. Knisley (1997),79 Ohio St.3d 282, 283.
 {¶ 19} The trial court's ruling that granted the motion in limine was a tentative, preliminary ruling about an evidentiary issue that the parties anticipated. The trial judge even stated on the record that she was making an "initial ruling" to move the matter along. "An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial." State v. Grubb (1986), 28 Ohio St.3d 199,203. Although PNH claims that it preserved this issue for appellate review, it fails to point to support in the record, and this Court was unable to find any. *Page 7 
 {¶ 20} Moreover, even if PNH had preserved this issue for review, it cannot demonstrate prejudicial error. PNH challenges the trial court's decision to limit its evidence of damages flowing from the breach of guarantee. The jury returned a verdict against PNH on its breach of guarantee claim, however. Errors pertaining to damages are of no consequence if there was not first a finding of liability on the claim.
 {¶ 21} The first of the jury's special interrogatories on the breach of guarantee claim asked, "Do you find by a preponderance of the evidence that PNH, Inc. is entitled to Judgment on its claim pursuant to the Personal Guarantee on the Loan assigned to it from Provident Bank?" The jury responded "No" and entered a verdict for the defendants. Therefore, having found no liability on the breach of guarantee claim, the jury did not reach the questions pertaining to damages, nor did it award any damages. Without a finding of liability on the breach of guarantee claim, there could be no prejudice resulting from any error in the exclusion of evidence pertaining to the valuation or calculation of damages. See Santiago v. Burson (Aug. 11, 1993), 9th Dist. No. 92CA005528; Bell v. Giamarco (1988), 50 Ohio App.3d 61. The first and second assignments of error are overruled accordingly.
 ASSIGNMENT OF ERROR III "WHETHER THE LOWER COURT ERRED IN PERMITTING THE APPELLEES TO INTRODUCE A REDACTED PORTION OF AN AGREEMENT THAT WAS NOT SIGNED BY APPELLANT AND TO WHICH THE APPELLANT WAS NOT A PARTY, IN APPELLEES' ATTEMPT TO SHOW APPELLANT'S BREACH OF THE ASSET BASED LOAN AGREEMENT AND IN AN ATTEMPT TO SHOW APPELLANT'S MALICIOUS INTENT TO COMMIT FRAUD AND ABUSE OF PROCESS."
 {¶ 22} Through its final assignment of error, PNH raises another alleged error that occurred during the September 2005 trial. PNH contends that the trial court erred in admitting a certain piece of evidence to support the claims of Barnitt and Sayavich for breach of contract, *Page 8 
fraud, and abuse of process. PNH prevailed on each of these claims against it, however, and has no standing to appeal because it was not aggrieved by the trial court's judgment on any of those claims. SeeWilloughby Hills v. C. C. Bar's Sahara, Inc. (1992), 64 Ohio St.3d 24,26.
 {¶ 23} "An appeal lies only on behalf of the party who is aggrieved by the judgment." Sampson v. Hughes (July 22, 1999), 4th Dist. No. 98CA2435, at *3. The sole purpose of an appeal is to provide the appellant an opportunity to seek relief in the form of a correction of errors of the lower court that injuriously affected him. Petitioners v.Bd. of Twinsburg Twp. Trustees (1965), 4 Ohio App.2d 171, 176.
 {¶ 24} Because PNH has no standing to appeal from the judgment on the claims upon which it prevailed, we will not reach the merits of its third assignment of error.
 CROSS-ASSIGNMENT OF ERROR "THE LOWER COURT ERRED IN DECIDING AGAINST DAVID BARNITT AND WILLIAM SAYAVICH ON THEIR CLAIMS OF EQUITABLE CONTRIBUTION."
 {¶ 25} Through their sole cross-assignment of error, Barnitt and Sayavich contend that the trial court erred in denying their claims for equitable contribution against Creatore. Because this was an equitable claim, after hearing all of the evidence at the second trial during February 2007, the visiting trial judge ordered the parties to brief the issue and submit proposed findings of fact and conclusions of law before he made his findings on the contribution claim of Barnitt and Sayavich.
 {¶ 26} The parties based their arguments on the evidence that had been presented at the second jury trial, a trial over which the same visiting judge had presided. The three-page brief of Barnitt and Sayavich began with a reference to what "[t]he evidence presented at trial demonstrated[.]" Creatore likewise briefed the issue as a "Summary and Closing Argument" *Page 9 
based on the evidence presented at the second jury trial. Several pages of Creatore's brief were devoted to summarizing the evidence presented that was relevant to the contribution claims and the defenses to those claims.
 {¶ 27} The arguments before the visiting judge, as well as the judge's ultimate decision on the contribution claims, focused heavily on evidence that was presented at the 2007 trial. Because the visiting judge had presided over the several-day trial in February 2007, he had the opportunity to review all of the evidence before the jury and was able to address the merits of the parties' arguments.
 {¶ 28} This Court has an inadequate record to review the propriety of the visiting judge's decision on this issue. When Barnitt and Sayavich filed their cross-appeal to this Court, they failed to file a praecipe with the court reporter to request a transcript of the second trial. Consequently, the record does not include a transcript of proceedings from the February 2007 trial before the visiting judge. Absent any demonstration on the record to the contrary, this Court must presume that the evidence supported the visiting judge's decision on the contribution claim. Without the necessary transcript, we must presume regularity in the trial court's judgment. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199.
 {¶ 29} In their brief on appeal, Barnitt and Sayavich attempt to support their position by pointing to exhibits that were presented during the 2005 trial before the original trial judge. Although these exhibits are properly part of the record before this Court on appeal, the visiting judge who was later assigned to the case was not present at the 2005 trial and the evidence presented at the 2005 trial was not before him when he made his decision on the contribution claim in 2007. Although some of this same evidence may have been presented at both trials, *Page 10 
where the record is silent, this Court cannot make any presumptions other than the propriety of the trial court's decision.
 {¶ 30} Because we do not have an adequate record to review the merits of the cross-assignment of error, we must presume regularity in the trial court's decision and overrule it accordingly.
 III. {¶ 31} The first and second assignments of error and the cross-assignment of error are overruled. The third assignment of error was not addressed because the appellant had no standing to raise it. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 11 
Costs taxed to both parties equally.
Carr, P.J. and Whitmore, J. concur. *Page 1